**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR VELOCITY COMMERCIAL CAPITAL LOAN TRUST 2020-1,** | : : : : | **CASE NO.** 1:23-cv-15590 |
| | : | **JUDGE:** |
| Plaintiff, | : : : | **MAGISTRATE:** |
| **vs.** | : : | |
| **PARR LEGACY, LTD., an Illinois corporation** **c/o Bonita Parr, Registered Agent** **4909 W. Division Street, Suite 407** **Chicago, IL 60651-3108,** | : : : : : : | |
| **ANTOINE SHAW, an individual** **1934 Hanover Lane** **Flossmoor, IL 60422,** | : : : : | |
| Defendants. | : : | |

**COMPLAINT ON PROMISSORY NOTE, PERSONAL GUARANTY, FOR FORECLOSURE, FOR APPOINTMENT OF A RECEIVER AND FOR OTHER RELIEF (NON-RESIDENTIAL PROPERTY)**

**Cook County, IL Parcel No.:**
**20-10-122-024-1025**

**Property Address:**
**5007 South Prairie Avenue**
**Chicago, IL 60651**

Plaintiff U.S. Bank National Association, as Trustee of Velocity Commercial Capital Loan Trust 202-1 (the "Plaintiff"), through undersigned counsel, states for its Complaint against the above defendants:

04985260-1

**PARTIES, JURISDICTION, AND VENUE**

1.     Plaintiff is the duly appointed trustee for the real estate mortgage investment conduit trust whose assets include the instruments that are the subject of the above-captioned matter. According to the United States Supreme Court, when a trustee files a lawsuit in its own name, the citizenship of the trustee is all that matters for diversity purposes.  Navarro Savings Ass'n v. Lee, 446 U.S. 458 (1980).  The citizenship of a national banking association is determined by the state designated in its articles of association as its main office.  See U.S. Bank National Association v. UBS Real Estate Securities Inc., 205 F.Supp.3d 386, 411 (S.D.N.Y. 2016); Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 318 (2006).    In this matter, the Plaintiff is a national banking association formed under the laws of the United States of America, specifically the National Bank Act, 12 U.S.C. § 1, et seq. The Plaintiff's main office, as stated in its articles of association, is in Cincinnati, Ohio.  As the citizenship of a national banking association is determined by the state designated in its articles of association as its main office, the Plaintiff is a citizen of the State of Ohio for the purposes of diversity jurisdiction herein.

2.     Defendant Parr Legacy, Ltd. (the "Borrower") is a corporation formed under the laws of the State of Illinois with its principal office in Illinois.

3.     Defendant Antoine Shaw (the "Guarantor") is an individual domiciled in the State of Illinois.

4.     Diversity jurisdiction is proper pursuant to 28 USC § 1332 as the Plaintiff and the Borrower are residents of different states and the amount in controversy exceeds $75,000.00.

5.     Venue is proper is this district pursuant to 28 U.S.C. § 1391(b) as both the Borrower and the Property (as defined below) reside herein.

## COUNT ONE – PROMISSORY NOTE

6.      The Plaintiff restates and incorporates by reference Paragraphs 1 through 5 of its Complaint as if fully rewritten herein.

7.      The Plaintiff is in possession of the original copy of and is entitled to enforce a certain Term Note in the original principal amount of $75,000.00 dated December 11, 2019 and executed by the Borrower.  The Promissory Note shall be referred to as the "Note."  The Note was originally payable to FBC Funding, LLC.  A copy of the Note with Alonges to the Plaintiff affixed thereto is attached as Exhibit A.

8.      The Note is in default as a result of the Borrower's failure to make payments when due. Specifically, the Borrower failed to make the December 1, 2022 payment and all payments thereafter.

9.      As a result of the Borrower's default, the Plaintiff has accelerated all unpaid principal amounts and all accrued and unpaid interest due under the Note.

10.      All conditions precedent to the Plaintiff's enforcement of the Note have occurred.

11.      As a result of the above default and acceleration, the Plaintiff is presently owed on the Note and the Mortgage (as that term is defined below) from the Borrower the following as of August 31, 2023:

| | |
|---|---|
| Principal | $73,469.47 |
| Accrued Interest | $6,046.97 |
| Default Interest | $2,204.10 |
| Late Charges | $90.45 |
| Corporate Advance | $165.00 |
| Escrow Advance | $572.79 |
| Prepayment Penalty | $1,469.38 |
| County Recording Fee | $98.00 |
| Foreclosure Fees and Costs | $7,500.00 |
| TOTAL | $91,616.16 |

plus regular interest that continues to accrue at rate specified in the Note (currently 8.99% per annum), plus default interest that continues to accrue at the rate of 4.0% per annum, plus fees and advances that continue to accrue, plus the Plaintiff's attorney fees and costs accrued to date, and those which it will continue to accrue thereafter.

## COUNT TWO – PERSONAL GUARANTY

12. The Plaintiff restates and incorporates by reference Paragraphs 1 through 11 of its Complaint as if fully rewritten herein.

13. The Plaintiff is the assignee of a certain Unlimited Guaranty (the "Guaranty") executed by Defendant Antoine Shaw (the "Guarantor"). A copy of the Guaranty is attached as Exhibit B.

14. By virtue of the Guaranty, the Guarantor absolutely, unconditionally and irrevocably guaranteed the full and punctual payment to the Plaintiff of all sums which may be due and owing on the Note as well as all sums which shall in the future become due and owing.

15. The Note is in default as set forth above.

16. The Guarantor is in default of the Guaranty by virtue of the failure to pay the amounts due on the Note.

17. By virtue of the Guarantor's default on the Note, the Plaintiff is presently owned from the Guarantor as of August 31, 2023:

| | |
|---|---|
| Principal | $73,469.47 |
| Accrued Interest | $6,046.97 |
| Default Interest | $2,204.10 |
| Late Charges | $90.45 |
| Corporate Advance | $165.00 |
| Escrow Advance | $572.79 |
| Prepayment Penalty | $1,469.38 |
| County Recording Fee | $98.00 |
| Foreclosure Fees and Costs | $7,500.00 |
| TOTAL | $91,616.16 |

plus regular interest that continues to accrue at rate specified in the Note (currently 8.99% per annum), plus default interest that continues to accrue at the rate of 4.0% per annum, plus fees and advances that continue to accrue, plus the Plaintiff's attorney fees and costs accrued to date, and those which it will continue to accrue thereafter.

## COUNT THREE – FORECLOSURE OF MORTGAGE

18.     The Plaintiff restates and incorporates by reference Paragraphs 1 through 17 of its Complaint as if fully rewritten herein.

19.     The Plaintiff is the assignee of a certain Commercial Mortgage, Security Agreement and Assignment of Leases and Rents (the "Mortgage"), dated December 11, 2019 and executed by the Borrower to secure repayment of the Note.  The Mortgage was recorded on December 20, 2019 as Instrument No. 1935408235 of the Recorder of Deeds of Cook County, Illinois.  A copy of the Mortgage is attached as Exhibit C.

20.     The assignments of the Mortgage in favor of the Plaintiff are attached as Exhibit D.

21.     The Mortgage constitutes a valid lien upon the real estate and improvements commonly known as 5007 South Prairie Avenue, Chicago, IL 60651 described in Exhibit A of the Mortgage (the "Property").

22.     As a consequence of the Borrower's default as described above, the conditions of defeasance contained in the Mortgage have been broken, and the Plaintiff is entitled to have the Mortgage foreclosed.

23.     All conditions precedent to the Plaintiff's enforcement of the Mortgage have occurred.

24.     Pursuant to 735 ILCS 5/15-1504, the Plaintiff provides the following information:

(A) Nature of Instrument: Mortgage

(B) Date of Mortgage: December 11, 2019

(C) Name of Mortgagor: Parr Legacy, Ltd.

(D) Name of Original Mortgagee:  FBC Funding, LLC

(E) Date and Place of Recording: December 20, 2019; Cook County, Illinois

(F) Identification of Recording: 1935408235

(G) Interest Subject to the Mortgage: Fee Simple

(H) Amount of Original Indebtedness: $75,000.00

(I) Legal Description and Address:

R-1908-IL-3571279

Legal Description

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATED IN THE COUNTY OF COOK, STATE OF ILLINOIS:

UNIT 5007-A IN 5001 THRU 5009 SOUTH PRAIRIE AVENUE CONDOMINIUM AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL ESTATE:

LOTS 1 AND 2 IN ATKINSON'S SUBDIVISION OF THE SOUTH 1/2 OF THE SOUTHEAST 1/4 OF THE NORTHWEST 1/4 OF SECTION 10, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, WHICH SURVEY IS ATTACHED AS EXHIBIT "C" TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT NO. 0521039065, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS

20-10-122-024-1025

Being Property Conveyed by Quit Claim Deed from S.O.S. Property Specialist, Inc., a Corporation to Parr Legacy Ltd., a corporation existing under and by virtue of the Laws of the State of Illinois, recorded February 28, 2014, in (book) Document No: 1405944061 and, Cook County, Illinois.

Address: 5007 South Prairie Avenue, Chicago, IL 60651

(J) Statement as to Defaults:  See Paragraphs 7-11 above.

(K) Name of Present Owner of the Real Estate: Parr Legacy Ltd.

(L)  Other Defendants: N/A

(M) Defendants Personally Liable: Parr Legacy, Ltd.

(N) Capacity in Which Plaintiff Brings Case:  Trustee of legal holder of indebtedness

(O)  Redemption Period:  Shortest allowed under the law.

## COUNT FOUR – ASSIGNMENT OF LEASES

25.    The Plaintiff restates and incorporates by reference Paragraphs 1 through 24 of its Complaint as if fully rewritten herein.

26.    To further secure repayment of the Note, and as part of the same transaction and in the same document as the Mortgage, the Borrower executed an assignment of the leases and rents of the Property (the "Assignment of Leases").

27.    The Assignment of Leases constitutes a present, absolute, and unconditional assignment by the Borrower of all rents and revenues of the Property (collectively, the "Rents").

28.    The Borrower has not accounted for or turned over the Rents collected since default.

29.    As a consequence of the Borrower's failure to make principal, interest, and other payments when due under the Note, the Plaintiff has revoked the license it granted the Borrower in the Assignment of Rents to collect the Rents, and the Plaintiff is now entitled to collect and receive all Rents from the Property and all Rents that the Borrower has collected since Plaintiff gave Borrower notice of the breach.

30.    All conditions precedent to the Plaintiff's enforcement of the Assignment of Leases have occurred.

## COUNT FIVE – POSSESSION OF COLLATERAL UNDER SECURITY AGREEMENT

31.    The Plaintiff restates and incorporates by reference Paragraphs 1 through 30 of its Complaint as if fully rewritten herein.

7

32.     To further secure repayment of the Note, and as part of the same transaction and in the same document as the Mortgage, the Borrower pledged all personal property that is part of the Property that is subject to a security interest pursuant to the Uniform Commercial Code (the "Security Interest").

33.     The Security Interest was perfected by recording the Mortgage.

34.     The Security Interest constitutes a valid lien on all the personal property that is part of the Property that is subject to a security interest pursuant to the Uniform Commercial Code (the "Personal Property").

35.     As a consequence of the Borrower's failure to make principal, interest, and other payments when due under the Note, the Plaintiff is entitled to exercise all its rights under the Security Interest and gain immediate possession of all the Personal Property or, in the alternative, have those items included in the appraisal of the Property and sold or auctioned off as part of the Property.

36.     All conditions precedent to the Plaintiff's enforcement of the Security Interest have occurred.

## COUNT SIX – APPOINTMENT OF A RECEIVER

37.     The Plaintiff restates and incorporates by reference Paragraphs 1 through 36 of its Complaint as if fully rewritten herein.

38.     The terms of the Mortgage entitle the Plaintiff to the appointment of a receiver for the Property upon the default of the Borrower.

39.     As a consequence of the Borrower's failure to make principal, interest, and other payments when due under the Note, the Borrower is in default of the terms of the Mortgage and the Assignment of Rents.

40. As a result of the above-described defaults, the Plaintiff is entitled to the appointment of a receiver over the Property, the Rents, and the Personal Property pledged under the Security Interest.

**WHEREFORE**, the Plaintiff prays for judgment as follows:

1. On Count One, for a judgment against the Borrower for the following as of August 31, 2023:

| | |
|---|---|
| Principal | $73,469.47 |
| Accrued Interest | $6,046.97 |
| Default Interest | $2,204.10 |
| Late Charges | $90.45 |
| Corporate Advance | $165.00 |
| Escrow Advance | $572.79 |
| Prepayment Penalty | $1,469.38 |
| County Recording Fee | $98.00 |
| Foreclosure Fees and Costs | $7,500.00 |
| TOTAL | $91,616.16 |

plus regular interest that continues to accrue at rate specified in the Note (currently 8.99% per annum), plus default interest that continues to accrue at the rate of 4.0% per annum, plus fees and advances that continue to accrue, plus the Plaintiff's attorney fees and costs accrued to date, and those which it will continue to accrue thereafter;

2. On Count Two, for a judgment against the Guarantor for the following as of August 31, 2023:

| | |
|---|---|
| Principal | $73,469.47 |
| Accrued Interest | $6,046.97 |
| Default Interest | $2,204.10 |
| Late Charges | $90.45 |
| Corporate Advance | $165.00 |
| Escrow Advance | $572.79 |
| Prepayment Penalty | $1,469.38 |
| County Recording Fee | $98.00 |
| Foreclosure Fees and Costs | $7,500.00 |
| TOTAL | $91,616.16 |

plus regular interest that continues to accrue at rate specified in the Note (currently 8.99% per annum), plus default interest that continues to accrue at the rate of 4.0% per annum, plus fees and advances that continue to accrue, plus the Plaintiff's attorney fees and costs accrued to date, and those which it will continue to accrue thereafter;

3.      On Count Three, that the Mortgage be adjudged a valid lien upon the Property, and that said lien be foreclosed; and that the Property be ordered sold and that Plaintiff be paid out of the proceeds of such sale; and for such other relief, legal and equitable, as may be proper and necessary; and that all the other defendants herein be required to set up their liens or interest in the Property or be forever barred from asserting the same;

4.      On Count Four, for an order that the Plaintiff is entitled to exercise all its rights under the Assignment of Rents and further ordering the Borrower to turn over all Rents it is holding and which it has collected since the Plaintiff gave it notice of the termination of its license to collect the Rents, and that the Plaintiff may receive and collect all Rents from the Property going forward;

5.      On Count Five, for an order granting the Plaintiff possession of the Personal Property or, in the alternative, to include the Personal Property in the appraisal of the Property and auctioned off as part of the Property;

6.      On Count Six, for the appointment of a receiver for the Property, the Rents, and the Personal Property pledged under the Security Interest;

7.      On all Counts, for interest, its costs, attorney fees, and expenses;

8.      On all Counts, for all other relief to which the Plaintiff is entitled in law and in equity.

Date:   November 2, 2023

Respectfully submitted,

/s/ Zachary D. Prendergast
Zachary D. Prendergast, Esq.
*Attorney for Plaintiff U.S. Bank National*
*Association, as Trustee for Velocity*
*Commercial Capital Loan Trust 2020-1*
ROBBINS KELLY PATTERSON &
TUCKER
312 Elm Street, Suite 2200
Cincinnati, OH 45202
Phone: (513) 721-3330
Fax: (513) 721-5001
E-mail: zprendergast@rkpt.com

# Term Note



# EXHIBIT A

Loan No. 6723042787

**December 11, 2019**

**$75,000.00**

## 1. Promise to Pay

For value received, the undersigned, **Parr Legacy LTD., an Illinois corporation**, with an address of **4909 West Division Street, Ste 407, Chicago, IL 60651** (the *"Borrower"*), promises to pay to the order of FBC Funding, LLC, a/an Illinois Limited Liability Company, with an address of 8545 S. WALLACE, Chicago, Illinois 60620 (together with its successors and assigns, the *"Lender"*), the principal amount of **Seventy five thousand and 00/100 dollars ($75,000.00)** on or before **January 1, 2050** (the *"Maturity Date"*), as set forth below, together with interest from the date hereof on the unpaid principal balance from time to time outstanding until paid in full. The Borrower shall pay consecutive monthly installments of principal and interest, as follows: **$602.93** commencing on **February 1, 2020**, and the same amount (except the last installment which shall be the unpaid balance) on the 1st day of each month thereafter. The aggregate principal balance outstanding shall bear interest thereon at a per annum rate equal to **8.99%**.

## 2. Amortization Period

The calculation of the payment amount is based on a **360 month** amortization period.

## 3. Payment Delivery; Interest Accrual Basis

Principal and interest shall be payable at Lender's main office or at such other place as Lender may designate in writing in immediately available funds in lawful money of the United States of America without set-off, deduction or counterclaim. Interest shall be calculated monthly on the basis of a 360-day year based on twelve (12) thirty (30) day months except that interest due and payable for a period of less than a full month shall be calculated by multiplying the actual number of days elapsed in such period by a daily rate based on said 360-day year.

## 4. Prepayment Penalty

This Note may be prepaid in whole or in part upon thirty (30) days prior written notice to Lender. In the event of any prepayment of this Note at any time through January 1, 2027 (the *"Prepayment Charge Expiration Date"*) whether by voluntary prepayment, acceleration or otherwise, the Borrower shall, at the option of Lender, pay a *"fixed rate prepayment charge"* equal to the product of (a) the principal amount so prepaid and (b) the percentage set forth in the table below for any prepayment made during the indicated period. No Prepayment Premium will be due if (a) prior to the Prepayment Charge Expiration Date, a prepayment amount received plus all other prepayment amounts received in the most recent 12 months is not greater than 20% of the Principal Amount of the Note, or (b) a prepayment is made in whole or in part after the Prepayment Charge Expiration Date.

For all purposes including the accrual of interest, any prepayment received by Lender on any day other than the last calendar day of the month shall be deemed to have been received on the last calendar day of the month.

| Period | Percentage |
|---|---|
| February 1, 2020 - January 1, 2021 | 5% |
| February 1, 2021 - January 1, 2022 | 4% |
| February 1, 2022 - January 1, 2023 | 3% |
| February 1, 2023 - January 1, 2024 | 2% |
| February 1, 2024 - January 1, 2025 | 1% |
| February 1, 2025 - January 1, 2026 | 1% |
| February 1, 2026 - January 1, 2027 | 1% |

After the last period indicated in the above table this Note may be prepaid in whole or in part without any prepayment charge.

Note-Commercial
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014
2019121019.1.0.2661-J20180529Y
05/2018
Page 1 of 4



## 5. Default

At the option of Lender, this Note shall become immediately due and payable without notice or demand upon the occurrence at any time of any of the following events of default (each, an *"Event of Default"*): (1) default of any liability, obligation, covenant or undertaking of the Borrower or any guarantor hereof to Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Borrower or any guarantor hereof under any other loan document delivered by the Borrower or any guarantor, or in connection with the loan evidenced by this Note or any other agreement by the Borrower or any guarantor with Lender; (2) failure of the Borrower or any guarantor hereof to maintain aggregate collateral security value satisfactory to Lender; (3) default of any material liability, obligation or undertaking of the Borrower or any guarantor hereof to any other party; (4) if any statement, representation or warranty heretofore, now or hereafter made by the Borrower or any guarantor hereof in connection with the loan evidenced by this Note or in any supporting financial statement of the Borrower or any guarantor hereof shall be determined by Lender to have been false or misleading in any material respect when made; (5) if the Borrower or any guarantor hereof is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property; (6) the death of the Borrower or any guarantor hereof and, if the Borrower or any guarantor hereof is a partnership or limited liability company, the death of any partner or member; (7) the institution by or against the Borrower or any guarantor hereof of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Borrower or any guarantor hereof is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Borrower or any guarantor hereof of an assignment for the benefit of creditors or the granting by the Borrower or any guarantor hereof of a trust mortgage for the benefit of creditors; (8) the service upon Lender of a garnishment, Citation to Discover Assets or other supplementary proceeding in which Lender is named as custodian of property of the Borrower or any guarantor hereof; (9) a judgment or judgments for the payment of money shall be rendered against the Borrower or any guarantor hereof, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution; (10) any levy, lien (including mechanics lien) except as permitted under any of the other loan documents between Lender and the Borrower, seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Borrower or any guarantor hereof; (11) the termination or revocation of any guaranty hereof; (12) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower or any guarantor hereof; or (13) the occurrence of any other event or circumstance, such that Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Borrower or any guarantor hereof to Lender has been or may be impaired.

## 6. How Payments Are Applied

Notwithstanding the foregoing, any payments received after the occurrence and during the continuance of an Event of Default shall be applied in such manner as Lender may determine. The Borrower hereby authorizes Lender to charge any deposit account which the Borrower may maintain with Lender for any payment required hereunder without prior notice to the Borrower.

## 7. Interest Rate Not To Exceed Legal Limit

If pursuant to the terms of this Note, the Borrower is at any time obligated to pay interest on the principal balance at a rate in excess of the maximum interest rate permitted by applicable law for the loan evidenced by this Note, the applicable interest rate shall be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

## 8. Business/Commercial Purpose

**The Borrower represents to Lender that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224 and will be used solely for the purposes specified in 815 ILCS 205/4 (c).**

## 9. Lien and Setoff

The Borrower grants to Lender a continuing lien on and security interest in any and all deposits or other sums at any time credited by or due from Lender to the Borrower and any cash, securities, instruments or other property of the Borrower in the possession of Lender, whether for safekeeping or otherwise, or in transit to or from Lender (regardless of the reason

Note-Commercial
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2019121019.1.0.2661-J20180529Y

05/2018
Page 2 of 4



Lender had received the same or whether Lender has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower to Lender and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower to Lender at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to Lender.

## 10. Waivers

No delay or omission on the part of Lender in exercising any right hereunder shall operate as a waiver of such right or of any other right of Lender, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. The Borrower and any other party obligated on account of this Note by contract, by operation of law or otherwise (the Borrower and each Borrower, if more than one, and each such other party, an *"Obligor"*) regardless of the time, order or place of signing, waive presentment, demand, protest, notice of intent to accelerate, notice of acceleration and all other notices of every kind in connection with the delivery, acceptance, performance or enforcement of this Note and assent to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral, and to the addition or release of any other party or person primarily or secondarily liable and waive all recourse to suretyship and guarantor defenses generally, including any defense based on impairment of collateral. To the maximum extent permitted by law, the Borrower waives and terminates any homestead rights and/or exemptions respecting any premises under the provisions of any applicable homestead laws, including without limitation 735 *ILCS* 5/12-901.

## 11. Indemnification

The Borrower shall indemnify, defend and hold Lender and its directors, officers, employees, agents and attorneys (each an *"Indemnitee"*) harmless against any claim brought or threatened against any Indemnitee by the Borrower or by any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of Lender's relationship with the Borrower (each of which may be defended, compromised, settled or pursued by Lender with counsel of Lender's selection, but at the expense of the Borrower), except for any claim arising out of the gross negligence or willful misconduct of Lender.

## 12. Costs and Expenses, Default Rate, Late Charge

The Borrower agrees to pay, upon demand, costs of collection of all amounts under this Note including, without limitation, principal and interest, or in connection with the enforcement of, or realization on, any security for this Note, including, without limitation, to the extent permitted by applicable law, reasonable attorneys' fees and expenses. Upon the occurrence and during the continuance of an Event of Default, interest shall accrue at a rate per annum equal to the aggregate of 4% plus the rate provided for herein. If any payment due under this Note is unpaid for 10 days or more, the Borrower shall pay, in addition to any other sums due under this Note (and without limiting Lender's other remedies on account thereof), a late charge equal to 5% of such unpaid amount.

## 13. Binding Effect, Joint and Several Liability, Complete Agreement

This Note shall be binding upon the Borrower and upon its heirs, successors, assigns and legal representatives, and shall inure to the benefit of Lender and its successors, endorsees and assigns.

The liabilities of the Borrower and each Borrower, if more than one, and any Obligor are joint and several; provided, however, the release by Lender of the Borrower or any one or more Obligors shall not release any other person obligated on account of this Note. Any and all present and future debts of the Borrower to any Obligor are subordinated to the full payment and performance of all present and future debts and obligations of the Borrower to Lender. Each reference in this Note to the Borrower and each Borrower, if more than one, and Obligor, is to such person individually and also to all such persons jointly. No person obligated on account of this Note may seek contribution from any other person also obligated, unless and until all liabilities, obligations and indebtedness to Lender of the person from whom contribution is sought have been irrevocably satisfied in full. The release or compromise by Lender of any collateral shall not release any person obligated on account of this Note.

The Borrower authorizes Lender to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note may be made by Lender, and any such reproduction shall be admissible in evidence with the same effect as the original itself in any judicial or administrative proceeding, whether or not the original is in existence.



### 14. Further Assurances

The Borrower will from time to time execute and deliver to Lender such documents, and take or cause to be taken, all such other further action, as Lender may request in order to effect and confirm or vest more securely in Lender all rights contemplated by this Note or any other loan documents related thereto (including, without limitation, to correct clerical errors) or to vest more fully in or assure to Lender the security interest in any collateral securing this Note or to comply with applicable statute or law.

### 15. Governing Law

This Note shall be governed by the laws of the State of Illinois.

### 16. Section Headings

Section headings are for reference only and are not intended to affect the interpretation of the provisions of this Note.

### 17. Notices

Any notices under or pursuant to this Note shall be deemed duly received and effective if delivered in hand to any officer or agent of the Borrower or Bank, or if mailed by registered or certified mail, return receipt requested, addressed to the Borrower or Bank at the address set forth in this Note or as any party may from time to time designate by written notice to the other party.

### 18. Jurisdiction and Venue

The Borrower irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Illinois, over any suit, action or proceeding arising out of or relating to this Note. The Borrower irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Borrower hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Borrower's, address shown in the records of Lender or (ii) by serving the same upon the Borrower(s) in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Borrower.

### 19. Waiver of Jury Trial

**THE BORROWER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS NOTE, ANY OF THE OBLIGATIONS OF THE BORROWER TO LENDER, AND ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN, WAIVED. THE BORROWER AND LENDER EACH CERTIFIES THAT NEITHER LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

### SIGNATURES

Executed as of December 11, 2019.

**Borrower**

**Parr Legacy LTD.**
*an Illinois corporation*

Antoine Shaw              12/11/2019
_____    _____
**Antoine Shaw**                **Date**
*President*

Note-Commercial
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2019121019.1.0.2661-J20180529Y

05/2018
Page 4 of 4



## ALLONGE TO PROMISSORY NOTE

This instrument is an Allonge that shall be attached to and made a part of a certain Promissory Note, dated December 11, 2019, executed by Parr Legacy LTD. in favor of FBC Funding, LLC (the "Lender").

Pay to the order of Velocity Commercial Capital, LLC without recourse.

**FBC Funding, LLC**
*a Illinois Limited Liability Company*

_____  **Date**

Allonge to $75,000.00 Promissory Note dated December 11, 2019
executed by Parr Legacy Ltd., a Illinois Corporation, as Borrower
in favor of FBC Funding, LLC, as Lender

PAY TO THE ORDER OF U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2020-1, WITHOUT RECOURSE

Dated as of March 02, 2021

**VELOCITY COMMERCIAL CAPITAL, LLC,**
**a California limited liability company**

By: _____
Name: M Byron
Title: Post Closing Manager

Loan Number: 6723042787



## Unlimited Guaranty

# EXHIBIT B

TO: FBC Funding, LLC, a/an Illinois Limited Liability Company (the *"Lender"*)

RE: Parr Legacy LTD., an Illinois corporation (the *"Borrower"*)

To induce Lender to make or continue to make loans, advances, or grant other financial accommodations to Borrower, in consideration thereof and for loans, advances or financial accommodations heretofore or hereafter granted by Lender to or for the account of the Borrower, the undersigned Antoine Shaw (the *"Guarantor"*) absolutely, unconditionally and irrevocably guarantees the full and punctual payment to Lender of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to Lender from the Borrower, whether direct or indirect, whether as a borrower, guarantor, surety or otherwise, including without limitation, respecting that certain Term Note, dated December 11, 2019, by Parr Legacy LTD. in favor of Lender in the original principal amount of $75,000.00 (*"Note"*) including, without limitation, interest, attorneys' fees and other amounts accruing after the filing of a petition in bankruptcy by or against Borrower, notwithstanding the discharge of Borrower from such obligations, together with all costs and expenses incurred by Lender in connection with such obligations, this Unlimited Guaranty (this *"Guaranty"*) and the enforcement thereof, and also guarantees the due performance by the Borrower of all its obligations under all other present and future contracts and agreements with Lender. This is a guaranty of payment and not collection.

**THE REFERENCE TO ONE OR MORE SPECIFIC OBLIGATIONS HEREIN SHALL NOT BE CONSTRUED AS A LIMITATION OF ANY KIND OF THE GUARANTOR'S OBLIGATIONS HEREUNDER, WHICH SHALL BE UNLIMITED AS TO ALL PRESENT AND FUTURE OBLIGATIONS OF THE BORROWER AS DESCRIBED ABOVE.**

Guarantor also agrees:

1. to indemnify and hold Lender and its directors, officers, employees, agents and attorneys harmless from and against all claims, obligations, demands and liabilities, by whomsoever asserted, and against all losses in any way suffered, incurred or paid as a result of or in any way arising out of or following or consequential to transactions with the Borrower, except for any claim arising out of the gross negligence or willful misconduct of Lender;

2. that this Guaranty shall not be impaired by any modification, supplement, extension, renewal or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, increase, release or other alteration of any of the obligations hereby guaranteed or of any security therefor, nor by any agreements or arrangements whatsoever with the Borrower or anyone else, all of which may be done without notice to or consent by the Guarantor;

3. that the liability of the Guarantor hereunder is direct and unconditional and due immediately upon default of the Borrower without demand or notice and without requiring Lender first to resort to any other right, remedy or security;

4. that Guarantor shall have no right of subrogation, reimbursement or indemnity whatsoever until Lender is indefeasibly paid in full, nor any right of recourse to security for the debts and obligations of the Borrower to Lender;

5. that the liability of the Guarantor is unlimited and shall be joint and several with the liabilities of any other guarantors;

6. that if the Borrower or the Guarantor or any other guarantor should at any time become insolvent or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by, against or in respect of the Borrower or the Guarantor, or any other guarantor of the obligations guaranteed hereby, any and all obligations of the Guarantor shall be immediately due and payable without notice;

7. that Lender's books and records showing the account between Lender and the Borrower shall be admissible in any action or proceeding, shall be binding upon the Guarantor for the purpose of establishing the items therein set forth and shall constitute conclusive proof thereof;

8. that this Guaranty is, as to the Guarantor, a continuing Guaranty that shall remain effective under successive transactions until the obligations guaranteed hereby are irrevocably paid in full;

9. that the death of Guarantor shall not effect the termination of this Guaranty as to Guarantor providing, that in any event within Sixty (60) days after the death of the Guarantor, Borrower or any surviving guarantor shall provide to Lender evidence that the estate of the Guarantor confirms its obligations to Lender under this Guaranty;



10. that termination, release or limitation of any guaranty of the obligations guaranteed hereby by any other guarantor shall not affect the continuing liability hereunder of the Guarantor;

11. that nothing shall discharge or satisfy the liability of the Guarantor hereunder except the full indefeasible payment and performance of all of the Borrower's debts and obligations to Lender with interest and costs of collection;

12. that this Guaranty shall not be affected by the illegality, invalidity or unenforceability of the obligations guaranteed, by any fraudulent, illegal or improper act by the Borrower, the legal incapacity or any other defense of the Borrower, the Guarantor or any other person obligated to Lender consequential to transactions with the Borrower nor by the invalidation, by operation of law or otherwise, of all or any part of the obligations guaranteed hereby, including but not limited to any interest accruable on the obligations guaranteed hereby during the pendency of any bankruptcy or receivership proceeding of the Borrower;

13. that any and all present and future debts and obligations of the Borrower to Guarantor are hereby waived and postponed in favor of and subordinated to the full indefeasible payment and performance of all present and future debts and obligations of the Borrower to Lender;

14. the Guarantor hereby grants to Lender a continuing lien and security interest in all deposits or other sums at any time credited by or due from Lender to the Guarantor and any property of the Guarantor at any time in the possession of Lender whether for safekeeping or otherwise, or in transit to or from Lender (regardless of the reason Lender had received the same or whether Lender has conditionally released the same) as security for the full and punctual payment and performance of all of the obligations guaranteed hereby, and such deposits and other sums may be applied or set off against such obligations at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to Lender;

15. that if at any time payment of all or any part of the obligations guaranteed hereunder is rescinded or otherwise must be restored by Lender to the Borrower or to the creditors of the Borrower or any representative of the Borrower or representative of the Borrower's creditors as a voidable preference or fraudulent transfer or conveyance upon the insolvency, bankruptcy or reorganization of the Borrower or the Guarantor, or to the creditors of the Guarantor or any representative of the Guarantor or representative of the creditors of Guarantor upon the insolvency, bankruptcy or reorganization of the Guarantor or otherwise, this Guaranty shall continue to be effective or be reinstated, as the case may be, as though such payments had not been made, and shall survive as an obligation of the Guarantor, and shall not be discharged or satisfied by said payment or payments, notwithstanding the return of the original of this Guaranty to the Guarantor or to the Borrower, or any other apparent termination of Guarantor's obligations hereunder;

16. that any rights and remedies available to Lender under this Guaranty are cumulative, and not exclusive of any rights and remedies otherwise available to Lender at law or in equity;

17. that Lender's delay or omission in exercising any of Lender's rights and remedies shall not constitute a waiver of these rights and remedies, nor shall Lender's waiver of any right or remedy operate as a waiver of any other right or remedy available to Lender. Lender's waiver of any right or remedy on any one occasion shall not be considered a waiver of same on any subsequent occasion, nor shall this be considered to be a continuing waiver;

18. that this Guaranty incorporates all discussions and negotiations between Lender and the Guarantor concerning the guaranty and indemnification provided by the undersigned hereby, and that no such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof, there are no preconditions to the effectiveness of this Guaranty and that no provision hereof may be altered, amended, waived, canceled or modified, except by a written instrument executed and acknowledged by Lender's duly authorized officer;

19. that this Guaranty and all documents which have been or may be hereinafter furnished by the Guarantor to Lender may be reproduced by Lender by any photographic, photostatic, microfilm, xerographic or similar process, and that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

Guarantor waives notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default and all other notices to which the Guarantor might otherwise be entitled; and any and all defenses, including without limitation, any and all defenses which the Borrower or any other party may have to the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of every type; including further, without limitation, any defense under 810 *ILCS* 5/3-605; and any right to exoneration or marshaling. To the maximum extent permitted by law, Guarantor waives and terminates any homestead rights and/or exemptions respecting any premises under the provisions of any applicable homestead law, including without limitation 735 *ILCS* 5/12-901. To the extent that it lawfully may, Guarantor hereby further agrees not to invoke any law relating to the marshaling of

Guaranty-Commercial
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2014

2019121019.1.0.2661-J20180529Y

05/2018
Page 2 of 3



collateral which might cause delay in or impede the enforcement of Lender's rights under this Guaranty or otherwise respecting the guaranteed obligations, and to the extent that it lawfully may do so, the Guarantor hereby irrevocably waives the benefits of all such laws. Except as otherwise provided by applicable law, Lender shall have no duty as to the collection or protection of any collateral, if any, securing the guaranteed obligations beyond the safe custody thereof.

Guarantor will from time to time execute and deliver to Lender, and take or cause to be taken, all such other further action as Lender may request in order to effect and confirm or vest more securely in Lender all the rights contemplated in this Guaranty (including, without limitation, to correct clerical errors) or respecting any of the obligations guaranteed hereby or to comply with applicable statute or law.

This Guaranty shall be governed by the laws of the State of Illinois.

If any provision of this Guaranty is found to be invalid, illegal or unenforceable, the validity of the remainder of the Guaranty shall not be affected.

Guarantor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Illinois, over any suit, action or proceeding arising out of or relating to this Guaranty. Guarantor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Guarantor hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Guarantor's address shown below or as notified to Lender or (ii) by serving the same upon the Guarantor in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Guarantor.

**GUARANTOR AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. GUARANTOR CERTIFIES THAT NEITHER LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

**Signatures.** Executed as of December 11, 2019.

**Guarantor**

 12/11/19

**Antoine Shaw**                    **Date**
*Individually*



UNOFFICIAL COPY EXHIBIT C

# Illinois Anti-Predatory Lending Database Program

Doc#. 1935408235 Fee: $98.00
Edward M. Moody
Cook County Recorder of Deeds
Date: 12/20/2019 10:25 AM Pg: 1 of 21

## Certificate of Exemption



**Report Mortgage Fraud**
**844-768-1713**

---

The property identified as:  **PIN:** 20-10-122-024-1025

**Address:**
**Street:**  5007 South Prairie, Unit 5007A

**Street line 2:**

**City:** Chicago  **State:** IL  **ZIP Code:** 60615

**Lender:**  FBC Funding

**Borrower:** Parr Legacy Ltd.

**Loan / Mortgage Amount:** $75,000.00

This property is located within the program area and the transaction is exempt from the requirements of 765 ILCS 77/70 et seq. because the application was taken by an exempt entity.

**Certificate number:**  E0C434F6-8E30-4ED9-9B97-1F920150657D  **Execution date:**  12/11/2019

UNOFFICIAL COPY

**Return To:** FBC Funding, LLC
PO Box 7089
Westlake Village, CA 91359-7089

**Prepared By:** Vince Ellzy
PO BOX 7089
Westlake Village, CA 91359

# Commercial Mortgage, Security Agreement and Assignment of Leases and Rents

This COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (this *"Mortgage"*) is entered into as of December 11, 2019, between Parr Legacy LTD., an Illinois corporation, with an address of 4909 West Division Street, Ste 407, Chicago, Illinois 60651 (the *"Mortgagor"*) and FBC Funding, LLC, a/an Illinois Limited Liability Company, with an address of 8545 S. WALLACE, Chicago, Illinois 60620 (the *"Lender"*).

The real property which is the subject matter of this Mortgage consists of the following condominium unit(s): 5007 South Prairie Avenue, Chicago, Illinois 60615-2742 (the *"Unit(s)"*), Property Identification Number(s) 20-10-122-024-1025.

## 1. Mortgage, Obligations and Future Advances

**1.1 Mortgage.** For valuable consideration paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor hereby irrevocably and unconditionally mortgages, warrants, grants, bargains, transfers, sells, conveys, sets over and assigns to Lender and its successors and assigns forever, all of Mortgagor's right, title and interest in and to the Property described below, to secure the prompt payment and performance of the Obligations (as hereinafter defined), including without limitation, all amounts due and owing to Lender and all obligations respecting that certain Term Note, dated December 11, 2019, by Parr Legacy LTD. in favor of Lender in the original principal amount of $75,000.00 maturing January 1, 2050 and bearing interest at an annual rate of 8.99% (the *"Note"*; and collectively, along with all other agreements, documents, certificates and instruments delivered in connection therewith, the *"Loan Documents"*), and any substitutions, modifications, extensions or amendments to any of the Loan Documents.



UNOFFICIAL COPY

The total balance at any time secured by this Mortgage shall not exceed a principal amount of $75,000.00, plus interest thereon, and any disbursements made for the payment of taxes, special assessments, or insurance on the Property, with interest on such disbursements.

**1.2 Security Interest in Property.** As continuing security for the Obligations the Mortgagor hereby pledges, assigns and grants to the Lender, and its successors and assigns, a security interest in any of the Property (as hereinafter defined) constituting personal property or fixtures. This Mortgage is and shall be deemed to be a security agreement and financing statement pursuant to the terms of the *Uniform Commercial Code of Illinois* (810 ILCS 5/1-101 *et seq.*) (the *"Uniform Commercial Code"*) as to any and all personal property and fixtures and as to all such property the Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code in addition to its rights hereunder. This Mortgage constitutes a financing statement filed as a fixture filing under Section 5/9-502(c) of the Uniform Commercial Code covering any Property which now is or later may become a fixture.

**1.3 Collateral Assignment of Leases and Rents.** The Mortgagor hereby irrevocably and unconditionally assigns to Lender, and its successors and assigns, as collateral security for the Obligations all of the Mortgagor's rights and benefits under any and all Leases (as hereinafter defined) and any and all rents and other amounts now or hereafter owing with respect to the Leases or the use or occupancy of the Property. This collateral assignment shall be absolute and effective immediately, but the Mortgagor shall have a license, revocable by Lender, to continue to collect rents owing under the Leases until an Event of Default (as hereinafter defined) occurs and Lender exercises its rights and remedies to collect such rents as set forth herein.

**1.4 Conditions to Grant.** Lender shall have and hold the above granted Property unto and to the use and benefit of Lender, and its successors and assigns, forever; provided, however, the conveyances, grants and assignments contained in this Mortgage are upon the express condition that, if Mortgagor shall irrevocably pay and perform the Obligations in full, including, without limitation, all principal, interest and premium thereon and other charges, if applicable, in accordance with the terms and conditions in the Loan Documents (as hereinafter defined) and this Mortgage, shall pay and perform all other Obligations as set forth in this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein and in the Loan Documents, the conveyances, grants and assignments contained in this Mortgage shall be appropriately released and discharged.

**1.5 Property.** The term *"Property"*, as used in this Mortgage, shall mean the Unit(s), as more particularly described in Exhibit A attached hereto, together with: (i) all right, title and interest now or hereafter existing, belonging or pertaining thereto; (ii) the following categories of assets as defined in the *Uniform Commercial Code*: goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, whether now owned or hereafter acquired, that are located on or used in connection with, or that arise in whole or in part out of the Mortgagor's use of or business conducted on or respecting, the Property and any substitutions, replacements, accessions and proceeds of any of the foregoing; (iii) all judgments, awards of damages and settlements hereafter made as a result or in lieu of any Taking, as hereinafter defined, (iv) all of the rights and benefits of the Mortgagor under any

UNOFFICIAL COPY

present or future leases and agreements relating to the Property, including, without limitation, rents, issues and profits, or the use or occupancy thereof, together with any extensions and renewals thereof, specifically excluding all duties or obligations of the Mortgagor of any kind arising thereunder (the *"Leases"*); and (v) all contracts, permits and licenses respecting the use, operation or maintenance of the Property.

**1.6 Obligations.** The term *"Obligation(s)"*, as used in this Mortgage, shall mean, without limitation, all loans, advances, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, now or hereafter owing by the Mortgagor to Lender at any time, of each and every kind, nature and description, whether arising under this Mortgage or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Mortgagor to Lender; or are due indirectly by the Mortgagor to Lender as endorser, guarantor or other surety, or as obligor of obligations due third persons which have been endorsed or assigned to Lender, or otherwise), absolute or contingent, due or to become due, now existing or hereafter contracted, including, without limitation, payment of $75,000.00 of the amounts outstanding pursuant to the terms of the Loan Documents as set forth herein. Said term shall also include all interest and other charges chargeable to the Mortgagor or due from the Mortgagor to Lender from time to time and all advances, costs and expenses referred to in this Mortgage, including without limitation the costs and expenses (including reasonable attorney's fees) of enforcement of Lender's rights hereunder or pursuant to any document or instrument executed in connection herewith.

**1.7 Future Advances.** This Mortgage secures the Obligations and any and all current and future advances to the Mortgagor evidenced by (or pursuant to) the Note and all extensions, renewals and modifications thereof, such other note or notes as may be issued at any time and from time to time by the Mortgagor to Lender and such other agreement(s) as may be entered into by the Mortgagor with Lender. The lien granted hereunder shall relate back to the date of this Mortgage, and shall secure any and all such future advances made not more than twenty (20) years after the date thereof. The total amount of the principal indebtedness secured hereby may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed _____ times the principal amount of the Note plus the interest thereon and any disbursements made for the payment of taxes, levies, insurance or otherwise hereunder with interest thereon.

## 2. Representations, Warranties, Covenants

**2.1 Representations and Warranties.** The Mortgagor represents and warrants that:

  (A) This Mortgage has been duly executed and delivered by the Mortgagor and is the legal, valid and binding obligation of the Mortgagor enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting the enforcement of creditors' rights generally;

  (B) The Mortgagor is the sole legal owner of the Property, holding good and marketable fee simple title to the Property, subject to no liens, encumbrances, leases, security interests or rights of others, other than as set forth in detail in Exhibit B hereto (the *"Permitted Encumbrances"*);



UNOFFICIAL COPY

(C) The Mortgagor is the sole legal owner of the entire lessor's interest in Leases, if any, with full power and authority to encumber the Property in the manner set forth herein, and the Mortgagor has not executed any other assignment of Leases or any of the rights or rents arising thereunder;

(D) As of the date hereof, there are no Hazardous Substances (as hereinafter defined) in, on or under the Property, except as disclosed in writing to and acknowledged by Lender; and

(E) Each Obligation is a commercial obligation and will be used solely for the purposes specified in 815 *ILCS* 205/4 (c) and does not represent a loan used for personal, family or household purposes and is not a consumer transaction.

**2.2 Recording; Further Assurances.** The Mortgagor covenants that it shall, at its sole cost and expense and upon the request of Lender, cause this Mortgage, and each amendment, modification or supplement hereto, to be recorded and filed in such manner and in such places, and shall at all times comply with all such statutes and regulations as may be required by law in order to establish, preserve and protect the interest of Lender in the Property and the rights of Lender under this Mortgage. Mortgagor will from time to time execute and deliver to Lender such documents, and take or cause to be taken, all such other or further action, as Lender may request in order to effect and confirm or vest more securely in Lender all rights contemplated by this Mortgage (including, without limitation, to correct clerical errors) or to vest more fully in, or assure to Lender the security interest in, the Property or to comply with applicable statute or law. To the extent permitted by applicable law, Mortgagor authorizes Lender to file financing statements, continuation statements or amendments, and any such financing statements, continuation statements or amendments may be filed at any time in any jurisdiction. Lender may at any time and from time to time file financing statements, continuation statements and amendments thereto that describe the Property as defined in this Mortgage and which contain any other information required by Article 9 of the *Uniform Commercial Code* for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Mortgagor is an organization, the type of organization and any organization identification number issued to Mortgagor; Mortgagor also authorizes Lender to file financing statements describing any agricultural liens or other statutory liens held by Lender. Mortgagor agrees to furnish any such information to Lender promptly upon request. In addition, Mortgagor shall at any time and from time to time, take such steps as Lender may reasonably request for Lender (i) to obtain an acknowledgment, in form and substance satisfactory to Lender, of any bailee having possession of any of the Property that the bailee holds such Property for Lender, and (ii) otherwise to insure the continued perfection and priority of Lender's security interest in any of the Property and the preservation of its rights therein. Mortgagor hereby constitutes Lender its attorney-in-fact to execute and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Mortgage terminates in accordance with its terms, all Obligations are paid in full and the Property is released.

**2.3 Restrictions on the Mortgagor.** The Mortgagor covenants that it will not, nor will it permit any other person to, directly or indirectly, without the prior written approval of Lender in each instance:



UNOFFICIAL COPY

(A) Sell, convey, assign, transfer, mortgage, pledge, hypothecate, lease or dispose of all or any part of any legal or beneficial interest in the Mortgagor or the Property or any part thereof or permit any of the foregoing, except as expressly permitted by the terms of this Mortgage;

(B) Permit the use, generation, treatment, storage, release or disposition of any oil or other material or substance constituting hazardous waste or hazardous materials or substances under any applicable Federal or state law, regulation or rule (*"Hazardous Substances"*); or

(C) Permit to be created or suffer to exist any mortgage, lien, security interest, attachment or other encumbrance or charge on the Property or any part thereof or interest therein (except for the Permitted Encumbrances), including, without limitation, (i) any lien arising under any Federal, state or local statute, rule, regulation or law pertaining to the release or cleanup of Hazardous Substances and (ii) any mechanics' or materialmen's lien. The Mortgagor further agrees to give Lender prompt written notice of the imposition, or notice, of any lien referred to in this Section and to take any action necessary to secure the prompt discharge or release of the same. The Mortgagor agrees to defend its title to the Property and Lender's interest therein against the claims of all persons and, unless Lender requests otherwise, to appear in and diligently contest, at the Mortgagor's sole cost and expense, any action or proceeding that purports to affect the Mortgagor's title to the Property or the priority or validity of this Mortgage or Lender's interest hereunder.

**2.4 Operation of Property.** The Mortgagor covenants and agrees as follows:

(A) The Mortgagor will not permit the Property to be used for any unlawful or improper purpose, will at all times comply with all Federal, state and local laws, ordinances and regulations, and the provisions of any Lease, easement or other agreement affecting all or any part of the Property, and will obtain and maintain all governmental or other approvals relating to the Mortgagor, the Property or the use thereof, including without limitation, any applicable zoning or building codes or regulations and any laws or regulations relating to the handling, storage, release or cleanup of Hazardous Substances, and will give prompt written notice to Lender of (i) any violation of any such law, ordinance or regulation by the Mortgagor or relating to the Property, (ii) receipt of notice from any Federal, state or local authority alleging any such violation and (iii) the presence or release on the Property of any Hazardous Substances;

(B) The Mortgagor will at all times keep the Property insured for such losses or damage, in such amounts and by such companies as may be required by law and which Lender may require, provided that, in any case, the Mortgagor shall maintain: (i) physical hazard insurance on an "all risks" basis in an amount not less than 100% of the full replacement cost of the Property; (ii) flood insurance if and as required by applicable Federal law and as otherwise required by Lender; (iii) comprehensive commercial general liability insurance; (iv) rent loss and business interruption insurance; and (v) such other insurance as Lender may require from time to time, including builder's risk insurance in the case of construction loans. All policies regarding such insurance shall be issued by companies licensed to do business in the state where the policy is issued and also in the state where the Property is located, be otherwise acceptable to Lender, provide deductible amounts acceptable to Lender, name Lender as mortgagee, loss payee and additional insured, and provide that no cancellation or material modification of such policies shall occur without at least thirty (30) days prior written notice to Lender. Such policies shall include



UNOFFICIAL COPY

(i) a mortgage endorsement determined by Lender in good faith to be equivalent to the "standard" mortgage endorsement so that the insurance, as to the interest of Lender, shall not be invalidated by any act or neglect of the Mortgagor or the owner of the Property, any foreclosure or other proceedings or notice of sale relating to the Property, any change in the title to or ownership of the Property, or the occupation or use of the Property for purposes more hazardous than are permitted at the date of inception of such insurance policies; (ii) a replacement cost endorsement; (iii) an agreed amount endorsement; (iv) a contingent liability from operation endorsement; and (v) such other endorsements as Lender may request. The Mortgagor will furnish to Lender upon request such original policies, certificates of insurance or other evidence of the foregoing as are acceptable to Lender. The terms of all insurance policies shall be such that no coinsurance provisions apply, or if a policy does contain a coinsurance provision, the Mortgagor shall insure the Property in an amount sufficient to prevent the application of the coinsurance provisions;

(C) Mortgagor will not enter into or modify the Leases in any material respect without the prior written consent of Lender, execute any assignment of the Leases except in favor of Lender, or accept any rentals under any Lease for more than one month in advance and will at all times perform and fulfill every term and condition of the Leases;

(D) Mortgagor will at all times (i) maintain complete and accurate records and books regarding the Property in accordance with generally accepted accounting principles and (ii) permit Lender and Lender's agents, employees and representatives, at such reasonable times as Lender may request, to enter and inspect the Property and such books and records; and

(E) Mortgagor will at all times keep the Property in good and first-rate repair and condition (damage from casualty not excepted) and will not commit or permit any strip, waste, impairment, deterioration or alteration of the Property or any part thereof.

**2.5 Payments.** The Mortgagor covenants to pay when due: all Federal, state, municipal, real property and other taxes, betterment and improvement assessments and other governmental levies, water rates, sewer charges, insurance premiums and other charges on the Property, this Mortgage or any Obligation secured hereby that could, if unpaid, result in a lien on the Property or on any interest therein. If and when requested by Lender, the Mortgagor shall deposit from time to time with Lender sums determined by Lender to be sufficient to pay when due the amounts referred to in this Section. The Mortgagor shall have the right to contest any notice, lien, encumbrance, claim, tax, charge, betterment assessment or premium filed or asserted against or relating to the Property; provided that it contests the same diligently and in good faith and by proper proceedings and, at Lender's request, provides Lender with adequate cash security, in Lender's reasonable judgment, against the enforcement thereof. The Mortgagor shall furnish to Lender the receipted real estate tax bills or other evidence of payment of real estate taxes for the Property within thirty (30) days prior to the date from which interest or penalty would accrue for nonpayment thereof. The Mortgagor shall also furnish to Lender evidence of all other payments referred to above within fifteen (15) days after written request therefor by Lender. If Mortgagor shall fail to pay such sums, Lender may, but shall not be obligated to, advance such sums. Any sums so advanced by Lender shall be added to the Obligations, shall bear interest at the highest rate specified in any note evidencing the Obligations, and shall be secured by the lien of this Mortgage.



UNOFFICIAL COPY

**2.6 Notices; Notice of Default.** The Mortgagor will deliver to Lender, promptly upon receipt of the same, copies of all notices or other documents it receives that affect the Property or its use, or claim that the Mortgagor is in default in the performance or observance of any of the terms hereof or that the Mortgagor or any tenant is in default of any terms of the Leases. The Mortgagor further agrees to deliver to Lender written notice promptly upon the occurrence of any Event of Default hereunder or event that with the giving of notice or lapse of time, or both, would constitute an Event of Default hereunder.

**2.7 Takings.** In case of any condemnation or expropriation for public use of, or any damage by reason of the action of any public or governmental entity or authority to, all or any part of the Property (a *"Taking"*), or the commencement of any proceedings or negotiations that might result in a Taking, the Mortgagor shall immediately give written notice to Lender, describing the nature and extent thereof. Lender may, at its option, appear in any proceeding for a Taking or any negotiations relating to a Taking and the Mortgagor shall immediately give to Lender copies of all notices, pleadings, determinations and other papers relating thereto. The Mortgagor shall in good faith and with due diligence and by proper proceedings file and prosecute its claims for any award or payment on account of any Taking. The Mortgagor shall not settle any such claim without Lender's prior written consent. The Mortgagor shall hold any amounts received with respect to such awards or claims, by settlement, judicial decree or otherwise, in trust for Lender and immediately pay the same to Lender. The Mortgagor authorizes any award or settlement due in connection with a Taking to be paid directly to Lender in amounts not exceeding the Obligations. Lender may apply such amounts to the Obligations in such order as Lender may determine.

**2.8 Insurance Proceeds.** The proceeds of any insurance resulting from any loss with respect to the Property shall be paid to Lender and, at the option of Lender, be applied to the Obligations in such order as Lender may determine; provided, however, that if Lender shall require repair of the Property, Lender may release all or any portion of such proceeds to the Mortgagor for such purpose. Any insurance proceeds paid to the Mortgagor shall be held in trust for Lender and promptly paid to it.

## 3. Certain Rights of Lender

**3.1 Legal Proceedings.** Lender shall have the right, but not the duty to intervene or otherwise participate in any legal or equitable proceeding that, in Lender's reasonable judgment, might affect the Property or any of the rights created or secured by this Mortgage. Lender shall have such right whether or not there shall have occurred an Event of Default hereunder.

**3.2 Appraisals/Assessments.** Lender shall have the right, at the Mortgagor's sole cost and expense, to obtain appraisals, environmental site assessments or other inspections of the portions of the Property that are real estate at such times as Lender deems necessary or as may be required by applicable law, or its prevailing credit or underwriting policies.

**3.3 Financial Statements.** Lender shall have the right, at the Mortgagor's sole cost and expense, to require delivery of financial statements in form and substance acceptable to Lender from the Mortgagor or any guarantor of any of the Obligations and the Mortgagor hereby agrees to deliver such financial statements and/or cause any such guarantor to so deliver any such financial statement when required by Lender.

UNOFFICIAL COPY

**3.4 Leases and Rent Roll.** The Mortgagor shall deliver to Lender (i) during each calendar year and at such other times as Lender shall request a rent roll for the Property, in form acceptable to Lender, listing all tenants and occupants and describing all of the Leases; and (ii) at such times as Lender shall request executed copies of all the Leases.

## 4. Defaults and Remedies

**4.1 Events of Default.** *"Event of Default"* shall mean the occurrence of any one or more of the following events:

(A) default of any liability, obligation, covenant or undertaking of the Mortgagor or any guarantor of the Obligations to Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Mortgagor or any guarantor of the Obligations under any other Loan Document or any other agreement with Lender;

(B) failure by the Mortgagor or any guarantor of the Obligations to perform, observe or comply with any of the covenants, agreements, terms or conditions set forth in this Mortgage or the Loan Documents;

(C) the (i) occurrence of any material loss, theft, damage or destruction of, or (ii) issuance or making of any levy, seizure, attachment, execution or similar process on a material portion of the Property;

(D) failure of the Mortgagor or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to Lender;

(E) default of any material liability, obligation or undertaking of the Mortgagor or any guarantor of the Obligations to any other party;

(F) any statement, representation or warranty heretofore, now or hereafter made by the Mortgagor or any guarantor of the Obligations in connection with this Mortgage or in any supporting financial statement of the Mortgagor or any guarantor of the Obligations shall be determined by Lender to have been false or misleading in any material respect when made;

(G) if the Mortgagor or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(H) the death of the Mortgagor or any guarantor of the Obligations and, if the Mortgagor or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(I) the institution by or against the Mortgagor or any guarantor of the Obligations of any proceedings under the *Bankruptcy Code* 11 USC §101 *et seq.* or any other law in which the Mortgagor or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Mortgagor or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Mortgagor or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(J) the service upon Lender of a garnishment, Citation to Discover Assets or other supplementary proceeding in which Lender is named as custodian of property of the Mortgagor or any guarantor of the Obligations;

UNOFFICIAL COPY

(K) a judgment or judgments for the payment of money shall be rendered against the Mortgagor or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

(L) any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Mortgagor or any guarantor of the Obligations;

(M) the termination or revocation of any guaranty of the Obligations; or

(N) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Mortgagor or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Mortgagor or any guarantor of the Obligations to Lender has been or may be impaired.

**4.2 Remedies.** On the occurrence of any Event of Default Lender may, at any time thereafter, at its option and, to the extent permitted by applicable law, without notice, exercise any or all of the following remedies:

(A) Declare the Obligations due and payable, and the Obligations shall thereupon become immediately due and payable, without presentment, protest, demand or notice of any kind, all of which are hereby expressly waived by the Mortgagor except for Obligations due and payable on demand, which shall be due and payable on demand whether or not an Event of Default has occurred hereunder;

(B) Enter, take possession of, manage and operate the Property (including all personal property and all records and documents pertaining thereto) and any part thereof and exclude the Mortgagor therefrom, take all actions it deems necessary or proper to preserve the Property and operate the Property as a mortgagee in possession with all the powers as could be exercised by a receiver or as otherwise provided herein or by applicable law; provided, however, the entry by Lender upon the Property for any reason shall not cause Lender to be a mortgagee in possession, except upon the express written declaration of Lender;

(C) With or without taking possession, receive and collect all rents, income, issues and profits (*"Rents"*) from the Property (including all real estate and personal property and whether past due or thereafter accruing), including as may arise under the Leases, and the Mortgagor appoints Lender as its true and lawful attorney with the power for Lender in its own name and capacity to demand and collect Rents and take any action that the Mortgagor is authorized to take under the Leases. Lender shall (after payment of all costs and expenses incurred) apply any Rents received by it to the Obligations in such order as Lender determines, or in accordance with any applicable statute, and the Mortgagor agrees that exercise of such rights and disposition of such funds shall not be deemed to cure any default or constitute a waiver of any foreclosure once commenced nor preclude the later commencement of foreclosure for breach thereof. Lender shall be liable to account only for such Rents actually received by Lender. Lessees under the Leases are hereby authorized and directed, following notice from Lender, to pay all amounts due the Mortgagor under the Leases to Lender, whereupon such lessees shall be relieved of any and all duty and obligation to the Mortgagor with respect to such payments so made;



UNOFFICIAL COPY

(D) In addition to any other remedies, to sell the Property or any part thereof or interest therein pursuant to exercise of its power of sale or otherwise at public auction on terms and conditions as Lender may determine, or otherwise foreclose this Mortgage in any manner permitted by law, and upon such sale the Mortgagor shall execute and deliver such instruments as Lender may request in order to convey and transfer all of the Mortgagor's interest in the Property, and the same shall operate to divest all rights, title and interest of the Mortgagor in and to the Property. In the event this Mortgage shall include more than one parcel of property or subdivision (each hereinafter called a *"Portion"*), Lender shall, in its sole and exclusive discretion and to the extent permitted by applicable law, be empowered to foreclose upon any such Portion without impairing its right to foreclose subsequently upon any other Portion or the entirety of the Property from time to time thereafter. In addition, Lender may in its sole and exclusive discretion subordinate this Mortgage to one or more Leases for the sole purpose of preserving any such Lease in the event of a foreclosure;

(E) File a suit for foreclosure of this Mortgage and/or collect the Obligations in accordance with the *Illinois Mortgage Foreclosure Act* (735 *ILCS* 5/15-1101 *et seq.*);

(F) Cause one or more environmental assessments to be taken, arrange for the cleanup of any Hazardous Substances or otherwise cure the Mortgagor's failure to comply with any statute, regulation or ordinance relating to the presence or cleanup of Hazardous Substances, and the Mortgagor shall provide Lender or its agents with access to the Property for such purposes, provided that the exercise of any of such remedies shall not be deemed to have relieved the Mortgagor from any responsibility therefor or given Lender "control" over the Property or cause Lender to be considered to be a mortgagee in possession, "owner" or "operator" of the Property for purposes of any applicable law, rule or regulation pertaining to Hazardous Substances; and

(G) Take such other actions or proceedings as Lender deems necessary or advisable to protect its interest in the Property and ensure payment and performance of the Obligations, including, without limitation, appointment of a receiver (and the Mortgagor hereby waives any right to object to such appointment) and exercise of any of Lender's remedies provided herein or in any other document evidencing, securing or relating to any of the Obligations or available to a secured party under the *Uniform Commercial Code* or under other applicable law.

In addition, the Lender shall have all other remedies provided by applicable law, including, without limitation, the right to pursue a judicial sale of the Property or any portion thereof by deed, assignment or otherwise.

The Mortgagor agrees and acknowledges that the acceptance by the Lender of any payments from either the Mortgagor or any guarantor after the occurrence of any Event of Default, the exercise by the Lender of any remedy set forth herein or the commencement, discontinuance or abandonment of foreclosure proceedings against the Property shall not waive the Lender's subsequent or concurrent right to foreclose or operate as a bar or estoppel to the exercise of any other rights or remedies of the Lender. The Mortgagor agrees and acknowledges that the Lender, by making payments or incurring costs described herein, shall be subrogated to any right of the Mortgagor to seek reimbursement from any third parties, including, without limitation, any predecessor in interest to the Mortgagor's title or other party who may be responsible under any law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances.

UNOFFICIAL COPY

**4.3 Advances.** If the Mortgagor fails to pay or perform any of its obligations respecting the Property, Lender may in its sole discretion do so without waiving or releasing Mortgagor from any such obligation. Any such payments may include, but are not limited to, payments for taxes, assessments and other governmental levies, water rates, insurance premiums, maintenance, repairs or improvements constituting part of the Property. Any amounts paid by Lender hereunder shall be, until reimbursed by the Mortgagor, part of the Obligations and secured by this Mortgage, and shall be due and payable to Lender, on demand, together with interest thereon to the extent permitted by applicable law, at the highest rate permitted under any of the notes evidencing the Obligations.

**4.4 Cumulative Rights and Remedies.** All of the foregoing rights, remedies and options (including without limitation the right to enter and take possession of the Property, the right to manage and operate the same, and the right to collect Rents, in each case whether by a receiver or otherwise) are cumulative and in addition to any rights Lender might otherwise have, whether at law or by agreement, and may be exercised separately or concurrently and none of which shall be exclusive of any other. The Mortgagor further agrees that Lender may exercise any or all of its rights or remedies set forth herein without having to pay the Mortgagor any sums for use or occupancy of the Property.

**4.5 Mortgagor's Waiver of Certain Rights.** To the extent permitted by applicable law, the Mortgagor hereby waives the benefit of all present and future laws (i) providing for any appraisal before sale of all or any portion of the Property or (ii) in any way extending the time for the enforcement of the collection of the Obligations or creating or extending a period of redemption from any sale made hereunder.

**4.6 Waiver of Right of Redemption and Other Rights.** Without limitation to anything contained herein, to the full extent permitted by law, Mortgagor agrees that it will not at any time or in any manner whatsoever take any advantage of any stay, exemption or extension law or any so-called *"Moratorium Law"* now or at any time hereafter in force, nor take any advantage of any law now or hereafter in force providing for the valuation or appraisement of the Property, or any part thereof, prior to any sale thereof to be made pursuant to any provisions herein contained, or to any decree, judgment or order of any court of competent jurisdiction; or claim or exercise any rights under any statute now or hereafter in force to redeem the Property or any part thereof, or relating to the marshaling thereof, on foreclosure sale or other enforcement hereof. To the full extent permitted by law, Mortgagor hereby expressly waives any and all rights it may have to require that the Property be sold as separate tracts or units in the event of foreclosure. To the full extent permitted by law, Mortgagor hereby expressly waives any and all rights to redemption and reinstatement under 735 *ILCS* 5/15-1101 on its own behalf, on behalf of all persons claiming or having an interest (direct or indirect) by, through or under Mortgagor and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date hereof, it being the intent hereof that any and all such rights of redemption of Mortgagor and such other persons, are and shall be deemed to be hereby waived to the full extent permitted by applicable law. To the full extent permitted by law, Mortgagor agrees that it will not, by invoking or utilizing any applicable law or laws or otherwise, hinder, delay or impede the exercise of any right, power or remedy herein or otherwise granted or delegated to Lender, but will permit the exercise of every such right, power and remedy as though no such law or laws have been or will have been made or enacted. To the full extent permitted by law, Mortgagor hereby agrees that no action for the enforcement of the lien or any provision hereof shall be subject to any

UNOFFICIAL COPY

defense which would not be good and valid on an action at law upon the Note. If the Mortgagor is a trustee, Mortgagor represents that the provisions of this Section (including the waiver of redemption of rights) were made at the express direction of the Mortgagor's beneficiaries and the persons having the power of direction over Mortgagor and are made on behalf of the trust estate of the Mortgagor and all beneficiaries of Mortgagor, as well as all other persons named above. Mortgagor acknowledges that the Property does not constitute agricultural real estate as defined in Section 735 ILCS 5/15-1201 or residential real estate as defined in Section 735 ILCS 5/15-1201.

## 5. Miscellaneous

**5.1 Costs and Expenses.** To the extent permitted by applicable law, the Mortgagor shall pay to Lender, on demand, all reasonable expenses (including attorneys' fees and expenses and reasonable consulting, accounting, appraisal, brokerage and similar professional fees and charges) incurred by the Lender in connection with Lender's interpretation, recordation of this Mortgage, exercise, preservation or enforcement of any of its rights, remedies and options set forth in this Mortgage and in connection with any litigation, proceeding or dispute whether arising hereunder or otherwise relating to the Obligations, together with interest thereon to the extent permitted by applicable law, until paid in full by the Mortgagor at the highest rate set forth in any of the notes evidencing the Obligations. If Lender is required by legislative enactment or judicial decision to pay any charge, imposition, assessment, levy or tax in or to any state, municipality or government on the Property (or on any interest therein), this Mortgage or the recording thereof, the other Loan Documents or the Obligations, other than taxes measured by the net income or gross income of Lender, then to the extent permitted by law, Mortgagor shall pay, when payable, such charge, imposition, assessment, levy or tax. If under applicable law and for any reason whatsoever, Mortgagor is not permitted to pay, in full, all of such charges, impositions, assessments, levies and taxes, then all Obligations shall become and be due and payable, at the election of Lender, within thirty (30) days following Lender's notice to Mortgagor. Any amounts owed by the Mortgagor hereunder shall be, until paid, part of the Obligations and secured by this Mortgage, and Lender shall be entitled, to the extent permitted by law, to receive and retain such amounts in any action for a deficiency against or redemption by the Mortgagor, or any accounting for the proceeds of a foreclosure sale or of insurance proceeds.

**5.2 Indemnification Regarding Leases.** The Mortgagor hereby agrees to defend, and does hereby indemnify and hold Lender and each of its directors, officers, employees, agents and attorneys (each an *"Indemnitee"*) harmless from all losses, damages, claims, costs or expenses (including attorneys' fees and expenses) resulting from the assignment of the Leases and from all demands that may be asserted against such Indemnitees arising from any undertakings on the part of Lender to perform any obligations under the Leases. It is understood that the assignment of the Leases shall not operate to place responsibility for the control or management of the Property upon Lender or any Indemnitee or make them liable for performance of any of the obligations of the Mortgagor under Leases, respecting any condition of the Property or any other agreement or arrangement, written or oral, or applicable law.

**5.3 Indemnification Regarding Hazardous Substances.** The Mortgagor hereby agrees to defend, and does hereby indemnify and hold harmless each Indemnitee from and against any and all losses, damages, claims, costs or expenses, including, without limitation, litigation costs and attorneys' fees and expenses and fees or expenses of any environmental engineering or cleanup firm incurred by such Indemnitee and arising out of or in connection with the Property or



UNOFFICIAL COPY

resulting from the application of any current or future law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances on or affecting the Property. The Mortgagor agrees its obligations hereunder shall be continuous and shall survive termination or discharge of this Mortgage and/or the repayment of all debts to Lender including repayment of all Obligations.

**5.4 Indemnitee's Expenses.** If any Indemnitee is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Mortgage or the Property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use thereof by the Mortgagor or other person or entity, then the Mortgagor shall indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, including attorneys' fees and expenses incurred by such Indemnitee in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by Lender in favor of the Mortgagor.

**5.5 Waivers.** The Mortgagor waives notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof. No delay or omission of Lender in exercising or enforcing any of its rights, powers, privileges, remedies, immunities or discretion (all of which are hereinafter collectively referred to as *"Lender's Rights and Remedies"*) hereunder shall constitute a waiver thereof; and no waiver by Lender of any default of the Mortgagor hereunder or of any demand shall operate as a waiver of any other default hereunder or of any other demand. No term or provision hereof shall be waived, altered or modified except with the prior written consent of Lender, which consent makes explicit reference to this Mortgage. Except as provided in the preceding sentence, no other agreement or transaction, of whatsoever nature, entered into between Lender and the Mortgagor at any time (whether before, during or after the effective date or term of this Mortgage) shall be construed as a waiver, modification or limitation of any of Lender's Rights and Remedies under this Mortgage (nor shall anything in this Mortgage be construed as a waiver, modification or limitation of any of Lender's Rights and Remedies under any such other agreement or transaction) but all Lender's Rights and Remedies not only under the provisions of this Mortgage but also under any such other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by Lender at such time or times and in such order of preference as Lender in its sole discretion may determine.

**5.6 Waiver of Homestead.** To the maximum extent permitted under applicable law, the Mortgagor hereby waives and terminates any homestead rights and/or exemptions respecting the Property under the provisions of any applicable homestead laws, including without limitation 735 *ILCS* 5/12-901.

**5.7 Joint and Several.** If there is more than one Mortgagor, each of them shall be jointly and severally liable for payment and/or performance of all obligations secured by this Mortgage and the term *"Mortgagor"* shall include each as well as all of them.

**5.8 Severability.** If any provision of this Mortgage or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Mortgage (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

UNOFFICIAL COPY

**5.9 Complete Agreement.** This Mortgage and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersede all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

**5.10 Binding Effect of Agreement.** This Mortgage shall run with the land and be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and Lender shall be entitled to rely thereon) until all Obligations are fully and indefeasibly paid. Lender may transfer and assign this Mortgage and deliver any collateral to the assignee, who shall thereupon have all of the rights of Lender; and Lender shall then be relieved and discharged of any responsibility or liability with respect to this Mortgage and such collateral. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Mortgage or the other Loan Documents.

**5.11 Notices.** Any notices under or pursuant to this Mortgage shall be deemed duly received and effective if delivered in hand to any officer or agent of Mortgagor or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to Mortgagor or Lender at the address set forth in this Mortgage or as any party may from time to time designate by written notice to the other party.

**5.12 Governing Law.** This Mortgage shall be governed by the laws of the State of Illinois.

**5.13 Reproductions.** This Mortgage and all documents which have been or may be hereinafter furnished by the Mortgagor to Lender may be reproduced by Lender by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

**5.14 Jurisdiction and Venue.** The Mortgagor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Illinois, over any suit, action or proceeding arising out of or relating to this Mortgage. The Mortgagor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Mortgagor hereby consents to process being served in any such suit, action or proceeding (i) by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to the Mortgagor's address set forth herein or such other address as has been provided in writing to Lender and (ii) in any other manner permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Mortgagor.

UNOFFICIAL COPY

**5.15 JURY WAIVER.**

MORTGAGOR AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND
INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL,
(A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR
PROCEEDING IN CONNECTION WITH THIS MORTGAGE, THE OBLIGATIONS, ALL
MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION
HEREWITH AND (B) AGREE NOT TO CONSOLIDATE ANY SUCH ACTION WITH ANY
OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED.
MORTGAGOR CERTIFIES THAT NEITHER LENDER NOR ANY OF ITS REPRESENTATIVES,
AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER
WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS
WAIVER OF RIGHT TO TRIAL BY JURY.

**Signatures.** Executed as of December 11, 2019.

**Mortgagor**

**Parr Legacy LTD.**
*an Illinois corporation*

_____  12/11/2019
**Antoine Shaw**                          **Date**
*President*

**Acknowledgment**

State of Illinois

County of _____COOK_____

This instrument was acknowledged before me on _11 Dec 2019_ by Antoine Shaw,
President of Parr Legacy LTD., an Illinois corporation on behalf of the corporation.

_____
*Notary Public*

MABLE J. LAWRENCE
*(Print Name)*

My commission expires: _07-29-20_

```
OFFICIAL SEAL
MABLE J LAWRENCE
NOTARY PUBLIC  STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/29/20
```




UNOFFICIAL COPY

**EXHIBIT "A"**
**Property Description**

See Legal Description attached hereto and made a part thereof





UNOFFICIAL COPY

**EXHIBIT "B"**

**Permitted Encumbrances**

NONE



Property of Cook County Clerk's Office




UNOFFICIAL COPY

**EXHIBIT A**

Legal Description

R-1908-IL-3571279

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATED IN THE COUNTY OF COOK, STATE OF ILLINOIS:

UNIT 5007-A IN 5001 THRU 5009 SOUTH PRAIRIE AVENUE CONDOMINIUM AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL ESTATE:

LOTS 1 AND 2 IN ATKINSON'S SUBDIVISION OF THE SOUTH 1/2 OF THE SOUTHEAST 1/4 OF THE NORTHWEST 1/4 OF SECTION 10, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, WHICH SURVEY IS ATTACHED AS EXHIBIT "C" TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT NO. 0521039065, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS

20-10-122-024-1025

Being Property Conveyed by Quit Claim Deed from S.O.S. Property Specialist, Inc., a Corporation to Parr Legacy Ltd., a corporation existing under and by virtue of the Laws of the State of Illinois, recorded February 28, 2014, in (book) Document No: 1405944061 and, Cook County, Illinois.



UNOFFICIAL COPY

# Condominium Rider

This Condominium Rider (*"Rider"*) is entered into as of December 11, 2019 and is incorporated into and shall be deemed to amend and supplement that certain Commercial Mortgage for Residential Property of even date herewith (the *"Mortgage"*), by Parr Legacy LTD., an Illinois corporation, with an address of 4909 West Division Street, Ste 407, Chicago, Illinois 60651 (the *"Mortgagor"*) in favor of FBC Funding, LLC (the *"Lender"*) to secure the Obligations (as defined in the Mortgage).

The real property which is the subject matter of the Mortgage consists of the following condominium unit(s): 5007 South Prairie Avenue, Chicago, Illinois 60615-2242 (the *"Unit(s)"*). Such real property includes an undivided interest in the Unit(s) and all rights appurtenant thereto under the Condominium Property Act, 765 ILCS 605, including, without limitation, an undivided interest in the common elements of the condominium project (the *"Condominium Project"*) in which such real property is included and formed pursuant to a Declaration of Condominium Ownership of record. The real property also includes all of the Mortgagor's interest in the association of unit owners of the Condominium Project and all of the Mortgagor's right, title and interest in any property or proceeds of such association.

In addition to all of the covenants and agreements in the Mortgage, the Mortgagor and Lender further covenant and agree as follows:

1. **Condominium Obligations.** Mortgagor shall perform all of the Mortgagor's obligations under the Condominium Project's Constituent Documents. The *"Constituent Documents"* are (i) the Declaration of Condominium Ownership and any other document which creates the Condominium Project; (ii) the bylaws, rules and regulations of the association of unit owners of the Condominium Project; and (iii) any other equivalent documents. The Mortgagor hereby agrees to pay when due all dues and assessments imposed respecting the Unit(s) pursuant to the Constituent Documents.

2. **Insurance.** So long as the association of unit owners respecting the Condominium Project maintains insurance respecting the Unit(s) and the common elements of the Condominium Project in compliance with the requirements in the Mortgage, the Mortgagor's obligations in the Mortgage to keep the Unit(s) insured shall be satisfied; provided that the Mortgagor will nevertheless comply with all obligations in the Mortgage to furnish to Lender evidence of such insurance.

3. **Insurance and Condemnation Proceeds.** In addition to Lender's rights provided in the Mortgage regarding the proceeds of insurance or any taking of all or any part of the property covered by the Mortgage, the Mortgagor hereby assigns to Lender all of its right, title and interest in such proceeds, to the extent such proceeds are attributable to the common elements in the Condominium Project.

4. **Lender's Prior Consent.** The Mortgagor shall not, except after notice to Lender and with Lender's prior written consent, agree to or vote for (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is not for the express benefit of Lender; (iii) termination of professional management



UNOFFICIAL COPY

and assumption of self-management of the association of unit owners of the Condominium Project; or (iv) any action that would have the effect of rendering the insurance coverage on the Unit(s) or the Condominium Project unacceptable to Lender.

**5. Remedies.** In addition to all of its remedies and rights pursuant to the Mortgage, if the Mortgagor fails to pay any condominium dues and assessment when due, Lender may at its option pay such amounts, which such amounts shall be added to the Obligations and until repaid to Lender shall bear interest from the date of disbursement by Lender at the same rate as the Obligations.

**Signatures.** Executed as of December 11, 2019.

**Parr Legacy LTD.**
*an Illinois corporation*

_____      12/11/19
**Antoine Shaw**                        **Date**
*President*

---

# EXHIBIT D

**Record and Return To:**
Velocity Commercial Capital
30699 Russell Ranch Rd Suite 295
Ste 295
Westlake Village, CA 91362

**This Instrument Prepared By:**
**Velocity Commercial Capital, LLC, a**
**California Limited Liability Company**
Velocity Commercial Capital
30699 Russell Ranch Rd Suite 295
Ste 295
Westlake Village, CA 91362
(818)532-3705

Loan #: **6723042787**

Doc#. 2315128272 Fee: $98.00
Karen A. Yarbrough
Cook County Clerk
Date: 05/31/2023 02:19 PM Pg: 1 of 3

---

**ASSIGNMENT OF Commercial Mortgage, Security Agreement and Assignment of Leases and Rents**
For good and valuable consideration, the sufficiency of which is hereby acknowledged, **FBC Funding, LLC  8545 S.**
**WALLACE, Chicago, IL 60620,** By these presents does convey, assign, transfer and set over to: **Velocity**
**Commercial Capital, LLC, a California Limited Liability Company**, 30699 Russell Ranch Rd Ste 295,
**Westlake Village, California 91362,** The Mortgage described therein with all interest, all liens, and any rights due or to
become due thereon. Said Mortgage for **$75,000.00** is recorded in the State of **Illinois**, County of **Cook** Official
Records , dated **12/11/2019** and recorded on **12/20/2019**, as Instrument No. **1935408235**
Legal Description: **See attached**
Property Address: **5007 South Prairie Avenue, Chicago, IL 60615**
Parcel Tax ID: **20-10-122-024-1025**
Original Mortgagor: **Parr Legacy Ltd.**
Original Mortgagee: **FBC Funding, LLC**
Date: **05/31/2023.**

**FBC Funding, LLC  by Its Attorney in Fact Velocity**
**Commercial Capital, LLC, a California Limited**
**Liability Company**

By: _____
Name: **Ryan Wise**
Title: **Director, Capital Markets**
Power of Attorney previously recorded on **03/20/2023,** as
Instrument No. **2307933445,**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF **California**
COUNTY OF **Los Angeles** } s.s.

On **05/31/2023,** before me, **Maegan Ann OMullane,** Notary Public, personally appeared **Ryan Wise,** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Notary Public: **Maegan Ann OMullane**
My Commission Expires: **01/08/2027**
Commission #: **2433474**

MAEGAN ANN O'MULLANE
Notary Public - California
Los Angeles County
Commission # 2433474
My Comm. Expires Jan 8, 2027

## EXHIBIT A
Legal Description

R-1908-IL-3571279

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATED IN THE COUNTY OF COOK, STATE OF ILLINOIS:

UNIT 5007-A IN 5001 THRU 5009 SOUTH PRAIRIE AVENUE CONDOMINIUM AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL ESTATE:

LOTS 1 AND 2 IN ATKINSON'S SUBDIVISION OF THE SOUTH 1/2 OF THE SOUTHEAST 1/4 OF THE NORTHWEST 1/4 OF SECTION 10, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, WHICH SURVEY IS ATTACHED AS EXHIBIT "C" TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT NO. 0521039065, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS

20-10-122-024-1025

Being Property Conveyed by Quit Claim Deed from S.O.S. Property Specialist, Inc., a Corporation to Parr Legacy Ltd., a corporation existing under and by virtue of the Laws of the State of Illinois, recorded February 28, 2014, in (book) Document No: 1405944061 and, Cook County, Illinois.



**Record and Return To:**
Velocity Commercial Capital
30699 Russell Ranch Rd Suite 295
Ste 295
Westlake Village, CA 91362

Doc#. 2315128273 Fee: $98.00
Karen A. Yarbrough
Cook County Clerk
Date: 05/31/2023 02:19 PM Pg: 1 of 3

**This Instrument Prepared By:**
**Velocity Commercial Capital, LLC, a**
**California Limited Liability Company**
Velocity Commercial Capital
30699 Russell Ranch Rd Suite 295
Ste 295
Westlake Village, CA 91362
(818)532-3705

Loan #: **6723042787**

---

**ASSIGNMENT OF Commercial Mortgage, Security Agreement and Assignment of Leases and Rents**
For good and valuable consideration, the sufficiency of which is hereby acknowledged, **Velocity Commercial Capital, LLC, a California Limited Liability Company 30699 Russell Ranch Rd Ste 295, Westlake Village, California 91362,** By these presents does convey, assign, transfer and set over to: **U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2020-1, 191 South LaSalle Street, 7th Floor  Chicago, IL 60603,** The Mortgage described therein with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$75,000.00** is recorded in the State of **Illinois,** County of **Cook** Official Records , dated **12/11/2019** and recorded on **12/20/2019,** as Instrument No. **1935408235**
Legal Description: **See Attached**
Property Address: **5007 South Prairie Avenue, Chicago, IL 60615**
Parcel Tax ID: **20-10-122-024-1025**
Original Mortgagor: **Parr Legacy Ltd.**
Original Mortgagee: **FBC Funding, LLC**
Date: **05/31/2023.**

**Velocity Commercial Capital, LLC, a California**
**Limited Liability Company**

By: _____
Name: **Ryan Wise**
Title: **Director, Capital Markets**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF **California**
COUNTY OF **Los Angeles** } s.s.

On **05/31/2023,** before me, **Maegan Ann OMullane,** Notary Public, personally appeared **Ryan Wise,** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Notary Public: **Maegan Ann OMullane**
My Commission Expires: **01/08/2027**
Commission #: **2433474**

MAEGAN ANN O'MULLANE
Notary Public - California
Los Angeles County
Commission # 2433474
My Comm. Expires Jan 8, 2027

## EXHIBIT A
Legal Description

R-1908-IL-3571279

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATED IN THE COUNTY OF
COOK, STATE OF ILLINOIS:

UNIT 5007-A IN 5001 THRU 5009 SOUTH PRAIRIE AVENUE CONDOMINIUM AS
DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL ESTATE:

LOTS 1 AND 2 IN ATKINSON'S SUBDIVISION OF THE SOUTH 1/2 OF THE
SOUTHEAST 1/4 OF THE NORTHWEST 1/4 OF SECTION 10, TOWNSHIP 38 NORTH,
RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY,
ILLINOIS, WHICH SURVEY IS ATTACHED AS EXHIBIT "C" TO THE DECLARATION
OF CONDOMINIUM RECORDED AS DOCUMENT NO. 0521039065, TOGETHER WITH
ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS

20-10-122-024-1025

Being Property Conveyed by Quit Claim Deed from S.O.S. Property Specialist, Inc., a
Corporation to Parr Legacy Ltd., a corporation existing under and by virtue of the Laws of
the State of Illinois, recorded February 28, 2014, in (book) Document No: 1405944061
and, Cook County, Illinois.

